## FLORENCE H. OLSON v. OSCAR J. PEDERSON AND ANOTHER.[1]

December 8, 1939.

No. 32,109.

[1]Reported in 288 N. W. 856.

*R. F. Schroeder,* for appellants.
*Kelly & LeVander,* for respondent.

PETERSON, JUSTICE.

The question is whether the complaint states facts sufficient to constitute a cause of action, which alleges that on August 18, 1937, defendants owned and kept a certain dog and that, while plaintiff was lawfully standing on the lawn of her home, the dog jumped on her, causing her to fall and to sustain personal injury.

Defendants contend that the complaint is insufficient because it does not allege that the dog was vicious or had a mischievous propensity to cause the harm complained of and that defendants had knowledge or notice thereof. Plaintiff maintains that defendants are liable regardless of the dog's character and defendants' *scienter* on the two separate grounds that the dog was trespassing on plaintiff's land at the time it committed the injury, so that defendants are liable under the cattle trespass rule, and that L. 1931, c. 295, § 29 (3 Mason Minn. St. 1938 Supp. § 7297-29), imposes absolute liability on the owner for all damage done by his dog. As to the 1931 law, defendants claim that it is not applicable to the facts of this case and that whatever rights plaintiff may have had thereunder were lost through repeal thereof by L. 1939, c. 410.

While the complaint does not in terms allege a trespass by the dog, we treat the allegations that the dog jumped on plaintiff while she was standing "on the lawn of her home" as the equivalent for the purposes of decision.

■ The dispute is not whether the general rule is that the owner is liable for harm done by his dog, which he has reason to know has dangerous propensities abnormal to its kind to cause harm to others, announced in cases like Maron v. Marciniak, 165 Minn. 156, 205 N. W. 894, and Fake v. Addicks, 45 Minn. 37, 47 N. W. 450, 22 A. S. R. 716, but whether the rule has any application at all to the facts of the instant case. Plaintiff in-

vokes as controlling the cattle trespass rule under which the owner of livestock is bound at his peril to keep them from straying on the lands of others and is liable for such trespasses and any harm done while upon the land to the possessor and the members of his household without regard to negligence or *scienter* on his part, citing 3 C. J. pp. 94-95, §§ 324-325.

The cattle trespass rule does not apply to dogs. Restatement, Torts, pp. 2-3, § 504(1), comment a. The distinction in the early common law was between animals, on the one hand, which normally could be confined without impairing their usefulness and which cause substantial damage to land or growing crops by any intrusion, and, on the other, those which cannot be so confined without difficulty or detriment to their usefulness and which normally do no substantial damage to land or crops by their intrusions. In the former class were included domestic animals such as horses, cows, hogs, and the like, and in the latter dogs, cats, bees, and similar animals. In the famous case of Mason v. Keeling [1699] 12 Mod. 332, where defendant, who was the owner, was held not liable for his dog's biting plaintiff, who at the time was walking in the street, upon the ground that it was not shown that the dog was vicious and the owner had knowledge of that fact, Lord Holt pointed out the distinction which has been observed ever since [12 Mod. 335]:

"If any beast in which I have a valuable property do damage in another's soil, in treading his grass, trespass will lie for it; but if my dog go into another man's soil, no action will lie."

Hence the statement of the rule was that the owner was not subject to the action of trespass *quare clausam* for his dog's entering on the lands of another of its own volition and doing damage. 2 Waterman, Trespass, p. 291, § 869. The history of the rule is stated at length in Winfield, Law of Tort, pp. 537-547, §§ 151-153; Wigmore, "Responsibility for Tortious Act: Its History," 7 Harv. L. Rev. 442, 3 Select Essays in Anglo-American Legal History, 474, at pp. 514-515.

The consequence of holding the cattle trespass rule inapplicable to dogs is that an action for injuries caused by a trespassing dog is governed by the rules applicable where the dog is not a trespasser, in which, as it was held in Mason v. Keeling [1699] 12 Mod. 332, *scienter* is the gist of the action. Where, as here, a dog trespasses of its own volition on the land of another, causing harm, the owner is not liable unless the dog was vicious or had a propensity to cause such harm to the owner's knowledge or notice. Van Etten v. Noyes, 128 App. Div. 406, 112 N. Y. S. 888; O'Connell v. Jarvis, 13 App. Div. 3, 43 N. Y. S. 129; McDonald v. Castle, 116 Okl. 46, 243 P. 215; Baker v. Howard County Hunt, 171 Md. 159, 188 A. 223, 107 A. L. R. 1312; 2 Am. Jur., Animals, § 105; note, 107 A. L. R. 1323; Restatement, Torts, pp. 2-3, § 504(1), comment a, pp. 37-40, § 518(2), comment j. This is the rule established at common law and is sustained by such authorities as Mason v. Keeling [1699] 12 Mod. 332; Beckwith v. Shordike [1767] 4 Burr. 2092; Brown v. Giles [1823] 1 Carr. & P. 118; Read v. Edwards [1864] 17 C. B. (N. S.) 245; Sanders v. Teape [Q. B. Div. 1884] 51 L. T. (N. S.) 263; Pollock, Law of Torts (13 ed.) p. 516; Robson, Trespasses and Injuries by Animals, pp. 33-36, 51-52; Holmes, The Common Law, pp. 20-24, 117-119, 157.

The question was considered at length recently in Buckle v. Holmes [1926] 2 K. B. 125, 54 A. L. R. 89, in which the question was whether the owner of a cat is liable for harm done by it simply because the cat was trespassing on plaintiff's land when it committed the injurious act. After reviewing the leading English cases, the court reiterated the rule as to dogs and held that cats are in the same category. Appellant in the cited case admitted in his argument that the owner of a dog would not be liable under the rule, which he conceded to be as we have stated it, but urged that the rule did not apply to cats. The rule of Buckle v. Holmes [1926] 2 K. B. 125, as to cats is followed in this country. Bischoff v. Cheney, 89 Conn. 1, 92 A. 660.

The Wisconsin court has reached a contrary conclusion in Chunot v. Larson, 43 Wis. 536, 28 Am. R. 567, and Matthews v. Scannell, 201 Wis. 381, 230 N. W. 53. The Scannell case was

decided under a statute imposing liability upon the owner of a dog for harm done by it, without *scienter*, and, although not necessary, the opinion states that the owner of a dog is liable at common law for harm done by it while trespassing. The Chunot case cites Beckwith v. Shordike [1767] 4 Burr. 2092; Angus v. Radin, 5 N. J. L. 815 (should be p. 940), 8 Am. D. 626; Dolph v. Ferris, 7 W. & S. (Pa.) 367, 42 Am. D. 246; Lyke v. Van Leuven, 4 Denio, 127, 1 N. Y. 515, 49 Am. D. 346; and Decker v. Gammon, 44 Me. 322, 69 Am. D. 99. In Beckwith v. Shordike, defendants entered on plaintiff's lands with their dogs and guns. The court pointed out that if the wrong had been done by the dogs while trespassing of their own volition there would be no liability, but that the trespass was caused by the voluntary acts of defendants themselves, for which they were liable. See note, 107 A. L. R. 1325, 1326. Angus v. Radin, 5 N. J. L. 940, was a case of trespass by an ox and was governed by the cattle trespass rule. Lyke v. Van Leuven, 4 Denio, 127, was a case of trespass by defendant's hogs. The court clearly indicated adherence to the common-law rule as laid down in Beckwith v. Shordike [1767] 4 Burr. 2092. Decker v. Gammon, 44 Me. 322, involved an injury to plaintiff's horse by defendant's horse and expressly approved and followed the rule of Mason v. Keeling [1699] 12 Mod. 332. These cases are authority against rather than in support of the court's decision. There was a strong dissent by Mr. Chief Justice Ryan.

In Matthews v. Scannell, 201 Wis. 381, the court refers to cases from Connecticut, Massachusetts, New York, Ohio, and Vermont, cited in 3 C. J. p. 94, note 82. These are all cattle, not dog, trespass cases. The Massachusetts court in Blair v. Forehand, 100 Mass. 136, 97 Am. D. 82, 1 Am. R. 94, indicated its adherence to the rule of Mason v. Keeling [1699] 12 Mod. 332, and Read v. Edwards [1864] 17 C. B. (N. S.) 245, in an opinion by Mr. Justice Gray. New York and Connecticut exempt dogs from the cattle trespass rule. Van Etten v. Noyes, 128 App. Div. 406, and Bischoff v. Cheney, 89 Conn. 1. As illustrative of the expressions found in cases cited by the court, which show that the courts which decided them adhere to the rule that the cattle trespass

rule does not apply to dogs, we quote from Goodman v. Gay, 15 Pa. 188, 193, 53 Am. D. 589:

"There are English cases, undoubtedly, and some American, which hold that the owner of domestic animals is not liable for injuries they commit unless he knew that they were vicious. But these cases generally are in relation to dogs, a domestic animal which everybody in every place owns and keeps, and suffers to go at large. The custom is almost as old as time, for Tobit had his dog. The universality of this custom has made the practice lawful, unless where it is interdicted by statute, which has been done to a certain extent in our State. And, within the limits of that interdict, it has been held that the owner, who does not chain or house up his dogs, is liable for the injury they commit, whether he knew they were addicted to killing sheep or not: 7 Barr 254 [Paff v. Slack, 7 Pa. 254]."

We think that the Wisconsin decisions should not be followed for the reasons that they are contrary to well established principles approved by the overwhelming weight of authority, that the cases cited by the court are not authority for but against its holding, and that the court failed to take notice that the cattle trespass rule does not apply to dogs at all.

The case of McClain v. Lewiston Interstate F. & R. Assn. 17 Idaho, 63, 104 P. 1015, 1026, 25 L.R.A.(N.S.) 691, 20 Ann. Cas. 60, does not sustain plaintiff's contention. That was a case of the owner taking his dog to a race track and negligently permitting the dog to be at large so as to endanger a rider. The court said [17 Idaho, 95]:

"Persons who are keepers and custodians of dogs are required to exercise proper judgment as to the place where the dog is taken and the position in which the dog may be placed, and are responsible for the acts of such dog; and when dogs are taken to a place not suitable or proper, or placed or suffered to be placed in a position where they become a dangerous agency, and an injury results therefrom, we think a jury is warranted in concluding that

the owner, harborer or person in control of such dog is guilty of negligence."

See 2 Am. Jur., Animals, § 105, note 11. Decker v. Gammon, 44 Me. 322, 69 Am. D. 99, cited by plaintiff, is a cattle trespass case and not in point for reasons already stated, as we have already shown.

In the complaint in an action against the owner for injuries caused by his dog, it is essential to allege the vicious character or evil propensity of the dog and the owner's *scienter*. Cuney v. Campbell, 76 Minn. 59, 78 N. W. 878. The dog's bad character or evil disposition is not presumed. The view expressed in Mason v. Keeling [1699] 12 Mod. 332, 335, that "the law takes notice, that a dog is not of a fierce nature, but rather the contrary," is generally adopted. A dog is presumed to be tame, docile, and harmless until the contrary appears. Domm v. Hollenbeck, 259 Ill. 382, 102 N. E. 782, Ann. Cas. 1914B, 1272; Meegan Bros. v. McKay, 1 Okl. 59, 30 P. 232; Holmes, The Common Law, pp. 118-119; Restatement, Torts, § 509, p. 21, comment f. Harming a human being is regarded as contrary to a dog's nature. "He errs *contra naturam suam* by biting or any serious misdoing." Beven, "The Responsibility at Common Law for the Keeping of Animals," 22 Harv. L. Rev. 465, 485.

The next question is the applicability of L. 1931, c. 295, 3 Mason Minn. St. 1938 Supp. §§ 7297-1 to 7297-37, to the facts of this case. The title is that it is an act "authorizing the counties" to license and regulate the running at large of dogs, to create a livestock and poultry indemnity fund, providing for handling and disposition thereof and fixing penalties. It consists of 37 sections, which cover in great detail the matters mentioned in the title. Section 1 provides that:

"The Board of County Commissioners of any county, by a majority vote, may provide for the licensing and regulating the running at large of dogs, and create a livestock indemnity fund to be handled and disbursed as hereinafter set forth. After the plan therefor shall have been in operation in any county for at

least one year, the Board of County Commissioners thereof may by a majority vote, abandon the same."

By L. 1933, c. 265 (3 Mason Minn. St. 1938 Supp. § 7297-38) provision is made for the payment of certain claims by "the Board of County Commissioners of any county in this state, where said county adopted Laws 1931, Chapter 295, licensing dogs, and later discontinued the same." The operation of the statute in a particular county depends upon the action of the county board, which may adopt and then discontinue the same.

The local option feature is the same in principle as that found in fence, stock, and intoxicating liquor laws, that the law's operation locally shall depend on local acceptance thereof. Such laws usually provide that the law shall be operative in such counties or other districts as shall accept the same through action of its county board or court or by popular vote. In Dunn v. Court of County Revenues, 85 Ala. 144, 149, 4 So. 661, the court held that no doubt can exist as to the power of the legislature to confer on the governing body of a county the authority to accept or reject the terms of a stock law in the mode pointed out by the law. Numerous cases involving such laws are collected in the annotations in 6 A. L. R. 218; 7 Ann. Cas. 743; 2 Am. Jur., Animals, §§ 142-146; 14 Am. Jur., Counties, § 30, note 16; 3 C. J. pp. 172-174, §§ 579-581; 3 C. J. S., Animals, § 110, note 18.

■ The complaint does not allege where the injury occurred, or that it occurred in a county in which the county board by majority vote adopted the provisions of the statute. It is necessary to allege such facts. Judicial notice will not be taken that a county has adopted a local option statute. State v. Kusick, 148 Minn. 1, 180 N. W. 1021. Much less can judicial notice be taken that the injury occurred in a particular county.

Our conclusion is that the case is governed by the rule that the owner's liability for harm done by his dog, while trespassing of its own volition on plaintiff's land, depends on showing the dog's vicious character or mischievous propensity and the owner's *scienter*. The cattle trespass rule has no application to dogs.

Our statutory law does not help plaintiff. The owner is liable without *scienter* only where his dog kills, wounds, or worries domestic animals. 2 Mason Minn. St. 1927, § 7284. There is no such statute applicable to harm done to human beings. L. 1931, c. 295, has not been shown to be applicable to the facts of this case. It and the repealing law, L. 1939, c. 410, need not be considered further. The common-law rule has been modified only to the extent that statutes have so provided. That interdict does not include the present case. See Goodman v. Gay, 15 Pa. 188, 53 Am. D. 589.

The complaint does not state a cause of action.

Reversed.

